# United States Court of Appeals
## For the First Circuit

No. 12-2321

UNITED STATES OF AMERICA,

Appellant,

v.

RYAN HOWE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Selya, Circuit Judge,
and Hillman,[*] District Judge.

Seth R. Aframe, Assistant United States Attorney, with whom John P. Kacavas, United States Attorney, was on brief, for appellant.
Behzad Mirhashem, with whom Jeffrey S. Levin was on brief, for appellee.

November 15, 2013

---

[*] Of the District of Massachusetts, sitting by designation.

**LYNCH, Chief Judge**. The question raised is whether the district judge correctly dismissed one count of a 2012 federal indictment against Ryan Howe. That in turn hinges on whether Howe, convicted in 1995 of a felony, had his civil right to sit on a jury restored as a matter of New Hampshire state law. The state statutes involved, though, have not yet been construed and are far from clear, and their construction will be determinative in this case. Qualification for jury service is a core concern of the state and its judiciary. We think the best course is to certify the statutory interpretation question to the New Hampshire Supreme Court. See N.H. Sup. Ct. R. 34.

I.

The defendant, Ryan Howe, was indicted in August 2012 for possession of a firearm by a felon, see 18 U.S.C. § 922(g)(1), based on his prior predicate conviction of a state felony. He moved to dismiss this count, arguing that he could not be classified as a felon under § 922(g)(1) due to the exceptions listed in 18 U.S.C. § 921(a)(20). Section 921(a)(20) provides: "[a]ny conviction which has been expunged, or set aside or for which a person . . . has had his civil rights restored shall not be considered a conviction for purposes of this chapter . . . ." This court has held that "the civil rights that must be restored to trigger the exception [in § 921(a)(20)] are the rights to vote, to hold public office, and to serve on a jury." United States v.

-2-

Estrella, 104 F.3d 3, 5-6 (1st Cir. 1997).  The government concedes that Howe's right to vote and right to hold public office were restored before the date of the charged offense.

Howe argues that he was eligible to serve on a jury under New Hampshire's juror eligibility statutes as of September 15, 2011, the date of the federal crime.  The prosecution argues that he was not.  The district court adopted Howe's reading, as a matter of law, and dismissed the felon in possession charge.[1]  See United States v. Howe, No. 12-cr-101-01-JD, 2012 WL 4757891, at *2-3 (D.N.H. Oct. 4, 2012).  The government appealed.  We now certify to the New Hampshire Supreme Court the question of law of whether Howe's right to serve on a New Hampshire jury was restored as of September 15, 2011 under sections 500-A:7-a and 651:5 of the New Hampshire Revised Statutes.  The facts are undisputed.

## II.

The New Hampshire Supreme Court will accept certified questions of law from a federal court "if there are involved in any proceeding before it questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court."  N.H. Sup. Ct. R. 34.  This case meets those requirements; whether Howe's

---

[1] He is also charged with one count of possession of an unregistered firearm, which is not at issue in this appeal.

right to serve on a jury had been restored is determinative of whether this court must affirm the dismissal of the federal charge. The New Hampshire Supreme Court has not previously construed the state's juror qualification and annulment statutes with respect to the qualification law's annulment-of-prior-felonies provisions, and the answer to the question presented here is far from clear. Federalism concerns also motivate us to certify the question best left to the New Hampshire high court to resolve.

The New Hampshire statute governing Qualifications of Jurors provides: "A juror shall not have been convicted of any felony which has not been annulled or which is not eligible for annulment under New Hampshire law." N.H. Rev. Stat. Ann. § 500-A:7-a(V). The process for annulment is set forth at section 651:5 of the New Hampshire Revised Statutes. It requires felons seeking an annulment to file a petition with a court and sets forth standards for the allowance of such a petition. Howe was eligible for annulment under New Hampshire law beginning five years from the date of his release from incarceration, see N.H. Rev. Stat. Ann. § 651:5(III)(d), but he had not petitioned for annulment before the date of the alleged offense. The question, then, is whether a felon who is eligible for annulment but who has not received an annulment may serve on a New Hampshire jury.

The parties offered competing interpretations of the New Hampshire statutes, and our view is that there are other possible

interpretations as well.  Howe argues that section 500-A:7-a should be interpreted to make a felon eligible to serve on a jury if (1) he had received an annulment, or (2) he were eligible to petition for an annulment, regardless of whether he had received it.  The prosecution argues that section 500-A:7-a should be interpreted to be consistent with section 651:5[2] and to make a felon ineligible as long as (1) his conviction was not eligible to be annulled, or (2) his conviction had not been annulled, even if it was eligible for annulment.

We look to "the method and approach" for legal interpretation announced by the state's highest court.  Cahoon v. Shelton, 647 F.3d 18, 22 (1st Cir. 2011).  Using those methods, we find no controlling precedent on this question.

III.

A.      Statutory Text

A court interpreting New Hampshire law must "first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning."  State v. Dor, 75 A.3d 1125, 1127 (N.H. 2013).  When construing statutory text, New Hampshire follows the widely accepted rule that "all of the words of a statute must be given effect and that the

---

[2] The relationship between the two statutes that concern annulment of convictions, one entitled Qualifications of Jurors, section 500-A:7-a, and the other entitled Annulment of Criminal Records, section 651:5, may be part of the interpretive task.

legislature is presumed not to have used superfluous or redundant words."  State v. Guay, 62 A.3d 831, 835 (N.H. 2013) (quoting Pennelli v. Town of Pelham, 807 A.2d 1256, 1258 (N.H. 2002)) (internal quotation mark omitted).

The parties' competing interpretations each run the risk of rendering some words redundant.  On one hand, as the district court noted, the government's reading could arguably make the "which is not eligible" clause redundant.  The argument goes that any felony "which is not eligible" for annulment would fall into the category of felonies that "ha[ve] not been annulled."  So, under the government's reading, the statute could have been, but was not, written as "A juror shall not have been convicted of any felony which has not been annulled under New Hampshire law."  The government argues in response that the clauses are not redundant because they implicitly distinguish between convictions that are flatly ineligible for annulment and those that are eligible for annulment but have not yet been annulled.  Without the "which is not eligible" clause, the government argues, the statute would be ambiguous as to whether felons with convictions ineligible for annulment could serve on juries.  It is also possible that the "which is not eligible" clause is only partially redundant under the government's reading, insofar as it could be intended as a catch-all to prohibit jury service by individuals with felonies that were improperly annulled.

On the other hand, Howe's interpretation has a similar flaw, as it arguably makes the "has not been annulled" clause redundant. Since a felony that was actually annulled would have been eligible for annulment, Howe's reading would allow the statute to have been written, although it was not, as "A juror shall not have been convicted of any felony which is not eligible for annulment." Howe's reading also reverses the logic of the text, effectively inverting its two disjunctive disqualifiers (a prospective juror is disqualified if he has a felony that "has not been annulled" or "is not eligible for annulment") to become disjunctive qualifiers (a prospective juror is qualified if he has a felony that "has been annulled" or "is eligible for annulment"). This reading would be in tension with the New Hampshire Supreme Court's command not to "add language that the legislature did not see fit to include." Dor, 75 A.3d at 1127.

We also note the statutes' interpretation may affect New Hampshire residents who are otherwise eligible jurors but who have felony convictions, whether annulled or not, from another jurisdiction.

B.      Legislative History

The legislative history -- which may be used when multiple reasonable interpretations of a statute exist, see State v. Lathrop, 58 A.3d 670, 673 (N.H. 2012) -- does not appear to resolve the matter. Howe points to isolated statements in the

legislative history, especially one by the study committee that evaluated an early draft of what became the juror eligibility law at issue here. But the statements were not made before the full legislative body and concerned an earlier draft of the statute with different language than the version ultimately enacted. <u>Cf.</u> <u>Hooksett Conservation Comm'n</u> v. <u>Hooksett Zoning Bd. of Adjustment</u>, 816 A.2d 948, 952 (N.H. 2003) (declining to rely solely on legislative history when the legislative history fails to "provide[] sufficient guidance to determine the legislature's intent").

C.      <u>Administrative Interpretation</u>

In some instances, New Hampshire courts consider the administrative practice of the bodies implementing relevant laws. <u>See</u> <u>In re Westwick</u>, 546 A.2d 1051, 1053 (N.H. 1988) ("[W]here a statute is of doubtful meaning, the long-standing practical and plausible interpretation applied by the agency responsible for its implementation, without any interference by the legislature, is evidence that the administrative construction conforms to the legislative intent." (quoting <u>State Emps.' Ass'n</u> v. <u>State</u>, 503 A.2d 829, 832 (N.H. 1986)) (internal quotation marks omitted)). We would be hesitant to give such an administrative interpretation much weight given the textual difficulties noted. Further, it is the New Hampshire Supreme Court which is in charge of the judicial system, and it has not spoken.

Howe, after argument,[3] provided a copy of the form that was issued by The Jury Center of the New Hampshire Superior Court to use to evaluate juror eligibility. In a portion reserved for court use, that form states next to a check box: "All of the convictions are eligible for an annulment under New Hampshire law. The juror is qualified for jury service." Howe reads that as supporting his position. However, we have not been provided with any basis for the conclusion that the Center is entitled to any deference in its administrative interpretation of the laws. Cf. Hamby v. Adams, 376 A.2d 519, 521 (N.H. 1977) (noting the importance of "administrative discretion" in evaluating weight of administrative practice). And, more importantly, an administrative practice that runs counter to the text of the law does not merit deference. See In re Westwick, 546 A.2d at 1055.

IV.

In conclusion, certifying the question in this case is proper not just because the legal issues are not decided by New Hampshire case law but also because they deal with strong state interests. Cf. Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs., 608 F.3d 110, 119 (1st Cir. 2010) (noting the importance of "strong federalism interests"); Globe Newspaper Co.

---

[3] Counsel for Howe has also represented that he was told by a clerk of the New Hampshire District Court in Merrimack County that the courts follow his interpretation. But the evidentiary shortcomings of that claim, which is not supported by an affidavit, are obvious.

v. <u>Beacon Hill Architectural Comm'n</u>, 40 F.3d 18, 24 (1st Cir. 1994) (noting that issues "of peculiarly state and local concern" are well-suited for certification).  Determining the balance between the possible New Hampshire legislative policy goals as to who may be qualified as a juror is a task better suited to the state high court.  <u>Cf.</u> <u>Acadia Ins. Co.</u> v. <u>McNeil</u>, 116 F.3d 599, 605 (1st Cir. 1997) (certifying question to New Hampshire Supreme Court in part "because the public policy arguments cut both ways").

V.

We certify the following question to the New Hampshire Supreme Court:

> Under sections 500-A:7-a(V) and 651:5 of the New Hampshire Revised Statutes and the undisputed facts of this case, is a felon whose conviction is eligible for annulment (that is, not categorically disqualified from jury service) but who has not applied for or received an annulment of that conviction qualified to sit as a juror?

We would also welcome any other comments on relevant points of state law that the New Hampshire Supreme Court should wish to share.

The clerk of this court is instructed to transmit to the New Hampshire Supreme Court, under the official seal of this court, a copy of the certified question and our opinion in this case, along with copies of the parties' briefs, appendix, and supplemental filings under Rule 28(j) of the Federal Rules of Appellate Procedure.  We retain jurisdiction over this appeal.

<u>So ordered</u>.