NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2016-0342


THE STATE OF NEW HAMPSHIRE

v.

TRAVIS C. PAIGE

Submitted:  June 13, 2017
Opinion Issued:  August 15, 2017

Ann M. Rice, deputy attorney general (Sean P. Gill, assistant attorney general, on the memorandum of law), for the State.


Thomas Barnard, senior assistant appellate defender, of Concord, on the brief, for the defendant.

LYNN, J.  The defendant, Travis C. Paige, appeals a ruling of the Superior Court (Bornstein, J.) concluding that his reckless conduct convictions were class A misdemeanors and sentencing him accordingly.  See RSA 631:3 (2016); RSA 625:9, IV(c) (2016).  We affirm.

I

The pertinent facts are as follows.  On September 3, 2015, the defendant led police on a high-speed vehicle chase in Grafton County between Bethlehem

and Bath. Throughout the chase, the defendant drove at speeds in excess of 100 miles per hour to evade police. The defendant also disregarded stop signs and nearly struck a cyclist and a minivan. Eventually, the defendant lost control of the vehicle after passing through a covered bridge and crashed into a ditch. The vehicle came to rest on the passenger side. Leaving his girlfriend in the passenger seat of the vehicle, the defendant climbed out of the driver's side window and fled on foot into the woods. The police officer on scene chose not to pursue the defendant, opting instead to help the defendant's girlfriend get out of the car, which was smoking. The defendant was arrested the next morning.

In November, the defendant was indicted on three counts of felony reckless conduct with a deadly weapon.[1] Ordinarily, reckless conduct is an unspecified misdemeanor. See RSA 631:3. However, it becomes a class B felony when a deadly weapon is used in the commission of the offense. See id.; RSA 625:11, V (2016). The defendant also was charged by informations with two misdemeanor offenses, one alleging that he disobeyed a police officer, and the other alleging that he resisted arrest. See RSA 265:4 (2014); RSA 642:2 (2016). In accordance with RSA 625:9, IV(c)(2), the State filed notice at or before the defendant's arraignment that it was electing to prosecute both misdemeanor offenses as class A misdemeanors.

The defendant was tried by jury in April 2016. In its jury instructions, the trial court instructed the jury on the elements of felony reckless conduct and, over the State's objection, on the elements of the lesser-included misdemeanor reckless conduct offense. The jury acquitted the defendant of all three felony reckless conduct charges, but convicted him of three counts of misdemeanor reckless conduct. The jury also convicted the defendant of resisting arrest and disobeying an officer.

At sentencing, the trial court ruled that the lesser-included reckless conduct offenses carried class A misdemeanor penalties. For the charges of resisting arrest and disobeying an officer, the court sentenced the defendant to consecutive twelve-month terms of incarceration. For each of the misdemeanor reckless conduct convictions, it imposed suspended twelve-month sentences that were concurrent with each other but consecutive to the stand committed sentences. This appeal followed.

II

On appeal, the defendant argues that, pursuant to RSA 625:9, IV(c), his misdemeanor reckless conduct convictions constituted class B misdemeanors and that the court erred in sentencing him on those charges as though they

---

[1] The indictments alleged that the motor vehicle the defendant operated constituted the deadly weapon.

were class A misdemeanor offenses.  Specifically, he contends that both the text and the legislative history of RSA 625:9, IV(c) indicate that the statute applies to convictions for lesser-included unclassified misdemeanors of crimes that are charged as felony level offenses.

RSA 625:9, IV(c) provides:

Any crime designated within or outside this code as a misdemeanor without specification of the classification shall be presumed to be a class B misdemeanor unless:

(1) An element of the offense involves an "act of violence" or "threat of violence" as defined in paragraph VII; or

(2) The state files a notice of intent to seek class A misdemeanor penalties on or before the date of arraignment. Such notice shall be on a form approved in accordance with RSA 490:26-d.

It is undisputed that at no time prior to arraignment did the State provide notice in accordance with RSA 625:9, IV(c)(2) that, in the event the defendant was convicted of lesser-included misdemeanor reckless conduct offenses, the State would seek class A misdemeanor penalties for such convictions.[2]  The defendant maintains that the absence of such notice required the trial court to treat his reckless conduct convictions as class B misdemeanors.  We disagree.

The defendant's argument requires us to interpret RSA 625:9, IV.  "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole."  State v. Lathrop, 164 N.H. 468, 469 (2012).  "We first examine the language of the statute, and, when possible, ascribe the plain and ordinary meanings to the words used."  Id.  "We do not strictly construe criminal statutes, but rather construe them according to the fair import of their terms and to promote justice."  Czyzewski v. N.H. Dep't of Safety, 165 N.H. 109, 111 (2013); see RSA 625:3 (2016).  Furthermore, we aim to "effectuate [the statute's] overall purpose and to avoid an absurd or unjust result."  State v. Burr, 147 N.H. 102, 104 (2001) (quotation omitted).  We employ a de novo standard of review.  State v. Lukas, 164 N.H. 693, 694 (2013).

RSA 625:9 is entitled "Classification of Crimes."  Paragraph I begins by stating that its provisions "govern the classification of every offense."  RSA

---

[2] The State does not argue that the misdemeanor reckless conduct offenses of which the defendant was convicted meet the criteria necessary to satisfy subparagraph (c)(1) of RSA 625:9, IV, and we therefore have no occasion to consider that issue.

3

625:9, I. Paragraph II provides that "[e]very offense is either a felony, misdemeanor or violation." Id. at II. Paragraph IV states that "[m]isdemeanors are either class A misdemeanors or class B misdemeanors when committed by an individual," and then in subparagraph (c) establishes the presumption set out in detail above. Id. at IV. The defendant asserts that the overall language and structure of RSA 625:9 supports his claim that subparagraph (c) applies to misdemeanors that are lesser-included offenses of crimes originally charged as felonies. In the defendant's view, because the statute applies to every offense, including all misdemeanors, and because the State did not file a notice of intent to seek class A misdemeanor penalties for the lesser-included reckless conduct offenses, the trial court was required to treat those offenses as class B misdemeanors. He further asserts that, if the legislature had intended to except lesser-included offenses from subparagraph (c), it would have done so explicitly in the text of the statute.

Although we acknowledge that a strictly literal interpretation of the statute could support the defendant's position, we reject it because it would produce absurd and illogical results that the legislature could not have intended. See Burr, 147 N.H. at 104. Under the defendant's construction of the statute, the State would be required to notify a defendant facing a felony charge that, should he or she be convicted of a lesser-included offense, the penalties it would seek would be for a class A misdemeanor. This would be redundant because, in cases in which the State has charged the defendant with a felony level offense, it is reasonable to presume that, if unable to secure a felony conviction on the charge, the State would always choose to pursue, in the alternative, the most serious lesser-included misdemeanor conviction available. To force the State to ritualistically file a notice pursuant to RSA 625:9, IV(c)(2) in every case in which there is the possibility that an offense charged as a felony could ultimately result in conviction for a lesser-included misdemeanor would elevate form over substance; it would serve no legitimate purpose and would simply result in the State "papering" the court file with one more form. In this case, for example, no reasonable person would assume that the State, focused upon securing class B felony convictions against the defendant, would alternatively pursue the least severe misdemeanor penalties possible.

Furthermore, adoption of the defendant's proposed construction of RSA 625:9, IV(c) would not serve the purpose intended by the legislature when it enacted the statute in 2009. See Senate Comm. on Judiciary, Hr'g on SB 201-FN (Mar. 17, 2009). The legislative history of the statute makes clear that its purpose was not to confer additional procedural or notice rights upon defendants. Id. Rather, its purpose was to save the State money by forcing prosecutors to decide before arraignment whether a defendant charged with an unclassified misdemeanor offense would face the prospect of incarceration for the offense. Id. Prior to the adoption of this statute, the Criminal Code required courts to treat unclassified misdemeanors as class A misdemeanors.

See RSA 625:9, IV(a)(2) (2007); State v. Bruce, 147 N.H. 37, 43 (2001). Thus, even though incarceration was not imposed as part of the sentence for most defendants charged with unclassified misdemeanors, all defendants so charged faced the potential of incarceration upon conviction, and were therefore entitled to court-appointed counsel if indigent. See Scott v. Illinois, 440 U.S. 367, 373-74 (1979); Gideon v. Wainwright, 372 U.S. 335, 344-45 (1963); State v. Weeks, 141 N.H. 248, 250 (1996). Because a class B misdemeanor does not carry the possibility of incarceration, the legislature determined, based upon testimony from representatives of the judiciary and the Public Defender, that the State could achieve significant savings in counsel expenses by establishing a system in which the "default" position treats unclassified misdemeanors as class B misdemeanors, and requiring the prosecutor to take the affirmative step of providing notice of his or her intent to seek class A misdemeanor penalties at or before the time when counsel would normally be appointed — the date of the arraignment. See Senate Comm. on Judiciary, Hr'g on SB 201-FN (Mar. 17, 2009) at 3-4.

Achievement of this cost-savings objective has no applicability when a defendant is charged with a felony. Because incarceration is among the prescribed penalties for a felony, an indigent defendant charged with such a crime will have counsel appointed at the expense of the State; counsel will continue to represent the defendant throughout the proceeding regardless of whether the defendant is ultimately convicted of the felony, convicted of a lesser-included misdemeanor, or acquitted. Thus, the legislative purpose would not be served by requiring the State to designate at the time of arraignment on the felony charge whether, if the defendant is convicted on a lesser-included unclassified misdemeanor, it intends to seek class A misdemeanor penalties. Irrespective of whether the prosecutor made such a designation, the State would incur the expenses of court-appointed counsel based upon the potential for conviction of the felony offense.

Finally, we reject the defendant's reliance upon the rule of lenity as a basis for construing RSA 625:9, IV(c) in the manner he advocates. See State v. Dansereau, 157 N.H. 596, 602 (2008) (stating that the "rule of lenity serves as a guide for interpreting criminal statutes where the legislature failed to articulate its intent unambiguously"). As we have previously explained, the rule of lenity comes into play only when a statute is ambiguous and resort to legislative history does not resolve the ambiguity. See id. at 602-03. Here, as explained above, the statute cannot reasonably be construed as the defendant advocates, and its legislative history makes clear that the legislature did not intend that the statute be given such a construction.

Affirmed.

DALIANIS, C.J., and HICKS and BASSETT, JJ., concurred.

5