NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Personnel Appeals Board
No. 2018-0296


APPEAL OF STEVEN SILVA
(New Hampshire Personnel Appeals Board)

Argued:  April 10, 2019
Opinion Issued:  May 10, 2019


Gary Snyder, general counsel, State Employees' Association of New Hampshire, Inc., SEIU, Local 1984, of Concord, on the brief and orally, for the petitioner.


Gordon J. MacDonald, attorney general (Jill A. Perlow, senior assistant attorney general, on the brief and orally), for the respondent.


HANTZ MARCONI, J.  The petitioner, Steven Silva, appeals a decision of the New Hampshire Personnel Appeals Board (PAB).  The PAB upheld the decisions of the respondent, the New Hampshire Department of Health and Human Services (DHHS), to suspend and subsequently terminate the petitioner's employment.  We affirm.

The following facts were found by the PAB or are otherwise derived from the record.  The petitioner began working at the New Hampshire Hospital in 1999.  He was terminated from employment in 2015 for violating the hospital's sexual harassment policy.  See N.H. Admin. R., Per 1002.08(b)(7) ("An appointing authority may dismiss an employee without prior warning for . . .

[v]iolation of a posted or published agency policy or procedure, the text of which warns that violation of same may result in dismissal."). He appealed this termination to the PAB. In 2016, the PAB found that the petitioner's 2015 termination did not comply with New Hampshire Administrative Rules, Per 1002.08(d) because DHHS did not provide the petitioner, prior to termination, with all of the evidence it relied upon to justify his termination, and, consequently, he was not given an opportunity to refute the evidence that led to his dismissal. See N.H. Admin. R., Per 1002.08(d). For that reason, the PAB ordered DHHS to reinstate the petitioner retroactively to the date of his termination and award him back pay and benefits.

Following the PAB's order, DHHS resumed paying the petitioner but simultaneously placed him on suspension so that it could conduct a new investigation into the same sexual harassment allegations that formed the basis for the 2015 termination. In 2017, after completing its investigation, DHHS terminated the petitioner again. The petitioner appealed his suspension as well as his 2017 termination to the PAB, arguing that the PAB's decision overturning his prior termination prevents DHHS from terminating or suspending him for the same conduct. After a hearing on the merits, the PAB upheld the suspension and subsequent termination. The petitioner moved for reconsideration; the PAB denied the petitioner's motion and this appeal followed.

RSA chapter 541 governs our review of the PAB's decision. Appeal of Cole, 171 N.H. 403, 411 (2018); RSA 21-I:58, II (2012). We will not set aside the PAB's decision except for errors of law, unless the petitioner demonstrates by a clear preponderance of the evidence that it is unjust or unreasonable. Cole, 171 N.H. at 411-12; RSA 541:13 (2007). The PAB's findings of fact are presumed prima facie lawful and reasonable. RSA 541:13. In reviewing the PAB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but rather to determine whether its findings are supported by competent evidence in the record. Cole, 171 N.H. at 412. However, we review the PAB's rulings on issues of law de novo. See id.

The petitioner first argues that his 2017 termination violates RSA 21-I:58, I (2012) because that statute requires reinstatement after a termination is overturned by the PAB due to the violation of an applicable regulation, such as Per 1002.08(d). This argument requires that we engage in statutory interpretation. The interpretation of a statute is a question of law. Cole, 171 N.H. at 408. In matters of statutory interpretation, this court is the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. Id. When construing a statute's meaning, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to the words used. Id. We do not consider words and phrases in isolation, but rather within the context of the statute as a whole, and we construe all parts of a statute together to effectuate its overall

purpose and to avoid an absurd or unjust result. <u>Appeal of New England Police Benevolent Ass'n</u>, 171 N.H. 490, 493 (2018). We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. <u>Id</u>.

The petitioner's argument also requires that we interpret Per 1002.08(d). We use the same principles of construction when interpreting both statutes and regulations. <u>Appeal of Michele</u>, 168 N.H. 98, 102 (2015). While deference is accorded to an agency's interpretation of its own regulations, that deference is not total. <u>Appeal of Collins</u>, 171 N.H. 61, 63 (2018). A reviewing court must still examine whether the agency's interpretation is consistent with the language of the regulation and with the purpose that the regulation was intended to serve. <u>Id</u>.

RSA 21-I:58, I, provides in pertinent part:

Any permanent employee who is affected by any application of the personnel rules, except for [certain rules not at issue here], may appeal to the personnel appeals board within 15 calendar days of the action giving rise to the appeal. . . . If the personnel appeals board finds that the action complained of was taken by the appointing authority . . . in violation of a statute or of rules adopted by the director, the employee shall be reinstated to the employee's former position or a position of like seniority, status, and pay.

RSA 21-I:58, I.

Per 1002.08(d) provides:

No appointing authority shall dismiss a classified employee under this section until the appointing authority:

(1) Offers to meet with the employee to discuss whatever evidence the appointing authority believes supports the decision to dismiss the employee;

(2) Offers to provide the employee with an opportunity to refute the evidence presented by the appointing authority provided, however:

a. An employee's failure to respond to a request for a meeting with the appointing authority shall not bar the appointing authority from dismissing an employee pursuant to this part; and

3

> b. An employee's refusal to meet with the appointing authority shall not bar the appointing authority from dismissing an employee pursuant to this part; and

> (3) Documents in writing the nature and extent of the offense.

N.H. Admin. R., Per 1002.08(d).

The petitioner argues that, because the PAB found that DHHS's 2015 termination failed to comply with the requirements of Per 1002.08(d), that termination was in violation of a rule adopted by the director, and thus DHHS was required to reinstate him pursuant to RSA 21-I:58, I. He argues that this statutory reinstatement requirement precludes DHHS from terminating him again for the same conduct which gave rise to his 2015 termination. He further asserts that construing the statute to allow for termination in these circumstances renders the protections of RSA 21-I:58 and Per 1002.08(d) meaningless, is contrary to legislative intent, and produces an absurd result. By contrast, DHHS argues that nothing in RSA 21-I:58, I, precludes it from terminating the petitioner, and that a contrary interpretation would give the petitioner an unfair windfall, "who, because of a technical rule violation, would be above reproach from his employer, regardless of how egregious the underlying conduct."

RSA 21-I:58, I, provides that, if the PAB finds that the "action complained of" by the employee was taken "in violation of" an applicable administrative rule, then the employee must be reinstated to his former position or a like one. RSA 21-I:58, I; Appeal of N.H. Div. of State Police, 171 N.H. 262, 267 (2018). The parties' dispute boils down to whether DHHS's second termination, after its first was rejected for failure to comply with Per 1002.08(d), is consistent with this reinstatement requirement. We conclude that it is.

The term "reinstated," as it is used in RSA 21-I:58, I, is not defined by statute. See RSA 21-I:1-a (2012) (defining certain terms used in RSA chapter 21-I). When a term is not defined in a statute, we look to its common usage, using the dictionary for guidance. Michele, 168 N.H. at 102. Webster's Third New International Dictionary defines "reinstate" as "to restore to a proper condition: replace in an original or equivalent state." Webster's Third New International Dictionary 1915 (unabridged ed. 2002); see also Black's Law Dictionary 1477 (10th ed. 2014) (defining "reinstate" as "[t]o place again in a former state or position; to restore"). Therefore, the statute requires that the employee be restored to the same state that he or she occupied prior to the action complained of. Here, prior to the petitioner's 2015 termination, he occupied a state in which he was required to comply with his employer's lawful policies or else face potential termination. See N.H. Admin. R., Per

4

1002.08(b)(7). This suggests that, upon the petitioner's reinstatement, he remained subject to potential discipline for the conduct underlying his 2015 termination. Conversely, construing the statute in the manner suggested by the petitioner would, in essence, immunize him from discipline for that conduct, which is a wholly different (and more favorable) state from that which he enjoyed prior to his 2015 termination. The plain language of the statute does not support such a construction.[1]

The petitioner argues that construing the statute to allow for termination in these circumstances renders the protections of both Per 1002.08(d) and RSA 21-I:58 meaningless because the State would not have to "follow the procedural requirements for termination . . . [or] abide by the requirement to reinstate an employee under RSA 21-I:58 for violation of the Personnel Rules." We disagree on both counts. As to Per 1002.08(d), we have explained that one of the rule's purposes is to provide adequate notice regarding the reasons why the employer believes termination is warranted. Collins, 171 N.H. at 64; see also Appeal of Boulay, 142 N.H. 626, 628 (1998) (construing predecessor to Per 1002.08(d)). Such notice helps the employee prepare a defense. See Boulay, 142 N.H. at 628 ("The dates and nature of the alleged misconduct must be sufficiently precise, when considered with information available to the [employee], to allow the presentation of an intelligent defense." (quotation omitted)); cf. Appeal of Blizzard 163 N.H. 326, 336 (2012) (explaining the purpose of constitutionally required notice). We fail to see how the employee's notice of the evidence against him, as well as his ability to refute that evidence, is hindered solely by the bringing of a second termination proceeding. So long as Per 1002.08(d) is complied with in carrying out the second termination, the protections of the rule are afforded.

To the extent the petitioner argues that allowing the State to begin anew after reinstatement gives it insufficient incentive to abide by the requirements of Per 1002.08(d) in the first instance, we are unpersuaded. In addition to reinstatement, RSA 21-I:58, I, provides that "[t]he employee shall be reinstated without loss of pay, provided that the sum shall be equal to the salary loss suffered during the period of denied compensation less any amount of compensation earned or benefits received from any other source during the period." RSA 21-I:58, I (emphasis added). Having to pay an employee for time during which he or she was not working is not an insignificant incentive for the State to comply with Per 1002.08(d). There is also the fact that the State must expend additional resources to carry out a second, duplicative termination, especially when, as here, that termination is appealed to the PAB. See N.H. Admin. R., Per-A 207.01(b) ("In appeals involving disciplinary action . . . the

---

[1] The common usage of the word "reinstate" also leads us to reject the petitioner's argument that his subsequent termination, in addition to violating RSA 21-I:58, I, violated the PAB's original order requiring that he be reinstated.

5

appointing authority shall have the burden of producing evidence supporting the action under appeal.").

As to RSA 21-I:58, nothing we say today alters the statute's requirement that, when the PAB finds that a challenged action was taken in violation of an applicable rule, such as Per 1002.08(d), reinstatement is required. See N.H. Div. of State Police, 171 N.H. at 267. The issue in this case concerns whether, when the rule violated is Per 1002.08(d), which provides not substantive but procedural protections, see Collins, 171 N.H. at 64, allowing the State to start over with a new termination process after it has reinstated the employee is consistent with RSA 21-I:58. See Gomez v. Stout, 918 N.E.2d 99, 101-02 (N.Y. 2009) (concluding that petitioner was entitled to reinstatement and back pay because termination was overturned due to procedural error, but also affirming intermediate appellate court's decision to remand to agency to allow it "to render a determination on the same hearing record" in compliance with procedural rule). For these reasons, we reject the petitioner's arguments that Per 1002.08(d) and RSA 21-I:58 preclude his 2017 termination.

The petitioner's next argument is that the PAB erred by failing to conclude that res judicata barred DHHS from litigating whether he could be suspended and subsequently terminated for the same conduct upon which his 2015 termination was based. The doctrine of res judicata prevents parties from relitigating matters actually litigated and matters that could have been litigated in a previous action. 412 S. Broadway Realty v. Wolters, 169 N.H. 304, 313 (2016). It can apply to decisions of administrative bodies made in an adjudicative context. See Cook v. Sullivan, 149 N.H. 774, 777-78 (2003). The doctrine applies if three elements are met: (1) the parties in the instant action must be the same as the parties in the previous action (or must be in privity with them); (2) the "cause of action" must be the same; and (3) the previous action must have resulted in a "final judgment on the merits." Wolters, 169 N.H. at 313 (quotation omitted). The applicability of res judicata is a question of law, which we review de novo. Id. The petitioner argues that the PAB's order overturning his 2015 termination constitutes a final judgment on the merits for res judicata purposes. We disagree.

As noted above, the PAB overturned the petitioner's 2015 termination on the grounds that DHHS failed to satisfy the requirements of Per 1002.08(d) prior to termination. That regulation obligates the appointing authority, prior to termination, to provide the employee with notice of the evidence against him and an opportunity to refute that evidence. N.H. Admin. R., Per 1002.08(d)(1)-(2); see also Collins, 171 N.H. at 64; Boulay, 142 N.H. at 627-28 (affirming PAB's decision to conditionally reinstate employee because employer failed to comply with predecessor to Per 1002.08(d)). In essence, Per 1002.08(d) makes the provision of notice and an opportunity to be heard a requirement for, or precondition to, termination. See N.H. Admin. R., Per 1002.08(d) ("No appointing authority shall dismiss a classified employee under this section

6

until the appointing authority [complies with subsections (1)-(3)].").  We have previously stated that a "judgment based upon a 'plaintiff's failure to satisfy a precondition to suit[ ] does not bar another action by the plaintiff instituted after . . . the precondition has been satisfied,'" regardless of whether the failure to comply with the precondition is apparent "'on the face of the pleadings, as a result of pretrial discovery, or from the evidence at trial.'"  So. Willow Properties v. Burlington Coat Factory of N.H., 159 N.H. 494, 499 (2009) (quoting Restatement (Second) of Judgments § 20(2) & cmt. k at 170, 175 (1982)).  Because the PAB's decision overturning the 2015 termination was based upon DHHS's failure to satisfy the requirements of Per 1002.08(d) prior to termination, we conclude that it is not a final judgment on the merits for res judicata purposes.  See id. at 498-99 (concluding that dismissal of eviction proceeding due to defective notice to quit was not a final judgment on the merits; thus, second eviction proceeding not barred by res judicata).  Since at least one of the elements of res judicata is not met, the doctrine does not apply.  See Wolters, 169 N.H. at 313.

We next consider the petitioner's argument that the PAB erred by failing to conclude that the doctrine of collateral estoppel barred DHHS from relitigating whether he could be suspended and subsequently terminated for the same conduct that gave rise to his 2015 termination.  Collateral estoppel may preclude the relitigation of findings by an administrative board, provided that the following requirements are satisfied: (1) the issue subject to estoppel must be identical in each action; (2) the first action must have resolved the issue finally on the merits; (3) the party to be estopped must have appeared in the first action or have been in privity with someone who did; (4) the party to be estopped must have had a full and fair opportunity to litigate the issue; and (5) the finding must have been essential to the first judgment.  Barry v. N.H. Dep't of Health and Human Servs., 170 N.H. 364, 367 (2017).  In order for the doctrine to apply, all five prerequisites must be satisfied, including the requirement that the issue subject to estoppel was essential to the first judgment.  Tyler v. Hannaford Bros., 161 N.H. 242, 247 (2010).  The party asserting the doctrine bears the burden of proving that it applies.  Barry, 170 N.H. at 367.  The applicability of collateral estoppel is a question of law that we review de novo.  Id.

The petitioner argues that collateral estoppel applies because, in part, the PAB made factual findings in its first order regarding DHHS's evidence of sexual harassment.  Any such findings made by the PAB, however, would not have been essential to its judgment that the petitioner's termination should be overturned due to DHHS's failure to comply with Per 1002.08(d).  Any discussion of DHHS's evidence of sexual harassment in the PAB's first order had no bearing on whether DHHS provided the petitioner with adequate notice of that evidence and an opportunity to refute it prior to his 2015 termination.  See Petition of Gilpatric, 138 N.H. 360, 363 (1994) (explaining that any finding made by trial court as to petitioner's specific medical diagnosis would not have

7

been essential to its judgment as to her work capacity because "her work capacity did not depend on the precise nature of her injuries, nor the exact scope of her medical diagnosis"). "'If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded.'" Tyler, 161 N.H. at 247 (quoting Restatement (Second) of Judgments § 27 cmt. h at 258 (1982)). Thus, since the petitioner has not demonstrated that all five prerequisites for collateral estoppel are satisfied, we conclude that the doctrine does not apply. Id.; Barry, 170 N.H. at 367-68.

The petitioner's remaining arguments bear only brief mention. He argues that the PAB erred because the law of the case doctrine precluded the State from re-terminating him. See Saunders v. Town of Kingston, 160 N.H. 560, 566 (2010). The petitioner never raised this argument before the PAB. Accordingly, we decline to consider it. See RSA 541:4 (2007) ("No appeal from any order or decision of the [PAB] shall be taken unless the appellant shall have made application for rehearing as herein provided, and . . . no ground not set forth therein shall be urged, relied on, or given any consideration by the court, unless the court for good cause shown shall allow the appellant to specify additional grounds."); Appeal of Northern New England Tele. Operations, LLC, 165 N.H. 267, 271-72 (2013).

The petitioner also argues that the PAB's decision violates his due process rights under the Fourteenth Amendment to the United States Constitution.[2] See U.S. CONST. amend. XIV, § 1. He argues that he has a property interest in his continued employment, and that DHHS's 2015 termination deprived him of this interest without adequate procedural protections. Therefore, the petitioner argues, his 2015 termination violated his due process rights. He further contends that, as a result of this constitutional violation, he is "entitled to reinstatement . . . and re-termination is not an option." However, even assuming, without deciding, that the petitioner's 2015 termination violated his due process rights under the Federal Constitution, and further assuming that he is constitutionally entitled to reinstatement as a remedy for that violation, the petitioner's argument that he is immunized from termination upon reinstatement is nothing more than a re-packaging of his argument as to the proper interpretation of RSA 21-I:58, I. Accordingly, we reject the petitioner's due process claim for the same reasons we reject his construction of RSA 21-I:58, I.

The petitioner's final arguments are that the PAB erred when it failed to address, in the instant proceeding, DHHS's failure to provide him with a "breakdown" of the back pay owed to him from the time of his 2015 termination to his 2016 reinstatement, and further erred when it failed to

---

[2] The petitioner does not argue that his rights under the New Hampshire Constitution were violated.

8

address, in the instant proceeding, DHHS's failure to pay him from the time of the PAB's 2016 order overturning his 2015 termination until the point at which he was placed on paid suspension one month later.  These arguments concern DHHS's compliance with the PAB's 2016 order.  The 2016 order is not before us in this appeal; therefore, we decline to comment on the existence or scope of DHHS's continuing obligations under that order.  See State v. Bent, 163 N.H. 237, 240-41 (2012).

Affirmed.

LYNN, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred.